UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



FILED

FEB 1 4 2012

CLERK

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

CIV. 12-4026

FOX DRYWALL & PLASTERING, INC., :
S AND S BUILDERS, INC., G&D VIKING
GLASS, INC., H&R ROOFING OF SOUTH :
DAKOTA, INC.,

                              :

            Plaintiffs,

vs.

                              :

SHERMAN MARSHALL, Tribal Judge of
the Flandreau Santee Sioux Tribal Court, of :
the Flandreau Santee Sioux Indian
Reservation; FLANDREAU SANTEE :
SIOUX TRIBAL COURT, FLANDREAU
SANTEE SIOUX TRIBE, SIOUX FALLS :
CONSTRUCTION COMPANY, a South
Dakota Corporation and GENE :
ROLLINGER CONSTRUCTION, INC., a
South Dakota Corporation. :

            Defendants.            :

BRIEF IN SUPPORT OF MOTION
FOR PRELIMINARY
INJUNCTION

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

This is an action for declaratory and injunctive relief involving the Flandreau

Santee Sioux Tribal Court's assertion of jurisdiction over a non-member defendant's

third-party contribution and indemnity claims against several non-member third-party

defendants – the plaintiffs in the present action before this Court. "The existence of tribal

jurisdiction itself presents a federal question within the scope of 28 U.S.C. 1331." Bruce

Civ.
Brief in Support of Plaintiffs' Motion for Preliminary Injunction
Page 2

H. Lien Co. v. Three Affiliated Tribes, 93 F.3d 1421 (8th Cir. 1996) (citing Iowa Mut. Ins.

Co. v. LaPlante, 480 U.S. 9, 15 (1987); see also Gaming World Int'l v. White Earth Band

of Chippewa Indians, 317 F.3d 840, 847 (8th Cir. 2003) ("[A]n action filed in order to

avoid tribal jurisdiction. . . necessarily asserts federal law."). This Court's exercise of

jurisdiction is premised on the exhaustion of tribal remedies – a prerequisite that has been

met in this case.

### Procedural Background

Sioux Falls Construction Company entered into a contract with the Flandreau

Santee Sioux Tribe to serve as the general contractor for the construction of an addition to

the Royal River Casino & Motel near Flandreau, South Dakota ("the Project"). (Ex. A,

Aff. William P. Fuller.) Sioux Falls Construction Company subsequently entered into

several subcontracts to complete various aspects of the Project, including Plaintiffs Fox

Drywall & Plastering, Inc., S and S Builders, Inc., G & D Viking Glass, Inc. and H&R

Roofing of South Dakota, Inc.[1] (collectively referred to herein as "the Subcontractors").

(Id., Ex. B[2].)

---

[1] Gene Rollinger Construction, Inc., also subcontracted with Sioux Falls
Construction on the Project but is not a plaintiff in this declaratory judgment action.

[2] A copy of the subcontract between Sioux Falls Construction and S and S Builders
is included as Exhibit B to the Affidavit of William P. Fuller. The subcontracts utilized
by Sioux Falls Construction and signed by the other subcontractors were substantively
identical and have not been included for purposes of limiting the documentation this
Court must review. However, the signature page for each subcontractor has been included
in Exhibit B.

Civ.
Brief in Support of Plaintiffs' Motion for Preliminary Injunction
Page 3

On March 18, 2008, the Flandreau Santee Sioux Tribe filed suit against Sioux

Falls Construction in Flandreau Santee Sioux Tribal Court, alleging breach of contract,

breach of warranty, deceit, bad faith and breach of the independent duty of habitability.

(Id., Ex. A.)  Sioux Falls Construction subsequently filed third-party indemnity and

contribution actions against the Subcontractors.  (Id., Ex. C).  Subcontractor S and S

Builders filed a motion to dismiss arguing that the tribal court did not have civil

jurisdiction over the third-party indemnity/contribution actions involving only non-

member third-party defendants under either of the Montana exceptions.  (Id., Ex. D.)

Subcontractors Fox Drywall & Plastering, Inc., G & D Viking Glass, Inc. and H&R

Roofing of South Dakota, Inc. joined S and S Builders' motion.  (Id., Ex. E.)   After

briefing by both parties, the trial court issued a memorandum decision dated July 9, 2009,

wherein it concluded that the tribal court had civil jurisdiction over the third-party actions

brought by Sioux Falls Construction.  (Id., Ex. F.)  The trial court concluded that the

Subcontractors' subcontracts with Sioux Falls Construction created private consensual

relationships with the Tribe that satisfied the jurisdictional requirements set forth in

Montana.  (Id.)

The Subcontractors filed a Petition for Discretionary Appeal with the Flandreau

Santee Sioux Tribal Appellate Court.  The Appellate Court granted the petition.  After

briefing by the parties, the Appellate Court concluded that the trial court had erroneously

denied the Subcontractors' motions to dismiss because there was insufficient evidence of

Civ.
Brief in Support of Plaintiffs' Motion for Preliminary Injunction
Page 4

the "nature and extent of 'commercial dealing' between the parties, especially between

the Flandreau Santee Sioux Tribe and the subcontractors." (Id., Ex. G.) The Appellate

Court remanded the case with instructions that the trial court conduct an evidentiary

hearing for purposes of establishing a sufficient record upon which to evaluate the nature

of the relationship, if any, between the Tribe and the subcontractors. (Id.)

An evidentiary hearing took place on April 29, 2010, wherein all parties presented

evidence regarding the jurisdictional facts outlined in the Appellate Court's October 3,

2009, Memorandum Opinion. (Id., Ex. H.) Following the hearing, the tribal court again

denied the Subcontractors' motions to dismiss. (Id.)

The Subcontractors filed a Second Petition for Discretionary Appeal with the

Flandreau Santee Sioux Tribal Court of Appeals and the petition was again granted.

After the jurisdictional issue was briefed by the parties, the Appellate Court affirmed the

trial court's order denying the Subcontractors' motions to dismiss. (Id., Ex. I.) Notice of

entry of the appellate order was filed on July 24, 2011. (Id., Ex. J.) On January 12, 2012,

the matter was formally remanded to the trial court for further proceedings. (Id., Ex. K.)

Having exhausted all available tribal remedies, the Subcontractors now seek declaratory

and injunctive relief from this Court.

## Analysis

Preliminary injunctive relief may be granted to these nonmember Subcontractors

against the court proceedings in the Flandreau Santee Sioux Tribal Court while the

jurisdictional issue is decided by this Court. See, e.g., Ford Motor Co. v. Todecheene, 394 F.3d 1170, 1173 (9th Cir. 2005); BNSF Railway Co. v. Roy, 2006 WL 1789070, at * 2 (D. Ariz. 2006); UNC Resources, Inc. v. Benally, 518 F. Supp. 1046, 1053 (D. Ariz. 1981). "The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." Kansas City Southern Transport Co., Inc. v. Teamsters Local Union #41, 126 F.3d 1059, 1066 (8th Cir. 1997) (quoting Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589, 593 (8th Cir.1984)). The factors courts must consider when evaluating a motion for a preliminary injunction are well-established: "the threat of irreparable harm to the movant, the balance between this harm and the injury an injunction would inflict on other parties, the movant's probability of success on the merits, and the public interest." Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds, 530 F.3d 724, 729 n. 3 (8th Cir. 2008) (quoting Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir.1981)). These factors are to be considered "flexibly" with the most significant factor being the probability of success on the merits. Bear v. Fleming, 714 F.Supp.2d 972, 978 (D.S.D. 2010). "Probability of success on the merits" does not mean the plaintiff must prove "a greater than fifty percent likelihood that he will prevail on the merits." Dataphase Systems, Inc., 640 F.2d at 113. "A plaintiff is required to make only a prima facie showing that there has been an invasion of its rights and that a preliminary injunction is

Civ.
Brief in Support of Plaintiffs' Motion for Preliminary Injunction
Page 6

essential to the assertion and preservation of those rights." Livestock Marketing Ass'n v.

U.S. Dept. of Agriculture, 132 F.Supp.2d 817, 824 (D.S.D. 2001).

### A.    *Probability of success on the merits.*

To regulate the conduct of non-members, tribal courts must possess both judicial

jurisdiction and legislative authority to regulate the activities at issue. Red Fox v.

Hettich, 494 N.W.2d 638, 642 (S.D. 1993) (citing F. Pommersheim, *The Crucible of*

*Sovereignty: Analyzing Issues of Tribal Jurisdiction,* 31 ARIZ. L. REV. 329, 335 (1989)).

The outer scope of a tribal court's civil jurisdiction over a non-member was defined in the

seminal case of Montana v. United States, where the United States Supreme Court set

forth two exceptions to the general rule precluding the exercise of tribal civil jurisdiction

over non-members. 450 U.S. 544, 564-66 (1981). Under the first exception, a tribe may

regulate, "through taxation, licensing, or other means, the activities of nonmembers who

enter consensual relationships with the tribe or its members, through commercial dealing,

contracts, leases, or other arrangements." Id. The second exception permits a tribe to

"exercise civil authority over the conduct of non-Indians on fee lands within its

reservation when that conduct threatens or has some direct effect on the political integrity,

the economic security, or the health or welfare of the tribe." Id. Because neither

Montana exception can be met in this case, the Subcontractors' motion for a preliminary

injunction should be granted.

The Subcontractors and Sioux Falls Construction – the only parties to the subcontracts which provide the sole basis for the indemnity/contribution claims at issue – are non-members. "[T]ribal jurisdiction over non-members is 'presumptively invalid.'" Progressive Specialty Ins. Co. v. Burnette, 489 F.Supp.2d 955 (D.S.D. 2007) (quoting Atkinson Trading Co. v. Shirley, 532 U.S. 645, 659 (2001)). See Nevada v. Hicks, 533 U.S. 353, 382 (2001) (Souter, J., concurring) ("[I]t is the membership status of the unconsenting party. . . that counts as the primary jurisdictional fact."); Smith v. Salish Kootenai College, 434 F.3d 1127, 1132-33 (9th Cir. 2006) (noting that the most important factor "courts look to when considering a tribal court's civil jurisdiction over a case in which a nonmember is a party . . . . is the party status of the nonmember."). While this presumption establishes the starting point for this Court's jurisdictional analysis, it is also indicative of the Subcontractor's likelihood of success on the merits. As noted by one federal court, "where the nonmembers are defendants, the [United States Supreme] Court has thus far held that the tribes lack jurisdiction, irrespective of whether the claims arose on Indian lands." Smith, 434 F.3d at 1132 (citing Hicks, 533 U.S. at 356); see also Hicks, 533 U.S. at 381 (Souter, J., concurring) ("A tribal court's civil jurisdiction to adjudicate claims arising out of acts committed on the reservation in the first instance depends on the character of the individual over whom jurisdiction is claimed, not on the title to the soil on which he acted."). The United States Supreme Court's jurisprudence demonstrates a concern for "defendants who are not tribal members to [defend themselves

against ordinary claims] in an unfamiliar court." <u>A-1 Contractors</u>, 520 U.S. at 442, 459 (concluding that there was no tribal jurisdiction over "run-of-the-mill" highway accident involving two non-members).

The concern for a non-member defendant's liberty interests in tribal court served as the basis for the United States Supreme Court's recent decision in <u>Plains Commerce Bank v. Long Family Land and Cattle Co.</u>, 554 U.S. 316 (2008). There, as before, the Court recognized the "limited" nature of tribal jurisdiction, rejecting the argument that a non-member bank's lease agreement with an Indian couple gave the tribal court jurisdiction to hear the Indian couple's claim that the non-member bank's subsequent sale of the property to a non-member buyer constituted discrimination. <u>Id</u>. at 340-41. The Court recognized that it is because of tribal sovereignty that a non-member defendant's liberty interests require protection.

> Tribal sovereignty. . . is a sovereignty outside the basic structure of the constitution. The Bill of Rights does not apply to Indian Tribes. Indian courts differ from traditional American courts in a number of significant respects. And nonmembers have no part in tribal government- they have no say in the law and regulations that govern tribal territory.

<u>Id</u>. at 337 (internal citations and quotations omitted). The Court further recognized that it is because of the limited and unique nature of tribal sovereignty that <u>Montana</u>'s exceptions exist – exceptions that "should not be construed in a manner that would 'swallow the rule.'. . or 'severely shrink' it." <u>Id</u>. at 330 (quoting <u>Atkinson</u>, 532 U.S. at 655; <u>Strate</u>, 520 U.S. at 458). In keeping with these principles, the <u>Plains Commerce</u>

Civ.
Brief in Support of Plaintiffs' Motion for Preliminary Injunction
Page 9

Court refused to expand <u>Montana</u>'s consensual relationship exception to create tribal

jurisdiction where it did not otherwise exist. The result in this case should be no

different.

The "consensual relationship" exception requires a direct rather than informal

relationship between the non-member and the Tribe. See <u>Hicks,</u> 533 U.S. at 359, n. 3

(noting that obtaining a warrant from the Tribal Court did not constitute a consensual

relationship). This essential element is lacking in this case. Sioux Falls Construction and

the Subcontractors are entities owned by non-members that are incorporated under the

laws of South Dakota. (Subcontractors' Affidavits[3] at ¶ ¶ 2 and 3.) There was no privity,

no contractual relationship, no agreements between the Tribe and the Subcontractors.

(<u>Id</u>. at ¶ ¶ 5-8.) The only party that entered into a private consensual relationship with

the Flandreau Santee Sioux Tribe was general contractor Sioux Falls Construction. (Id. ¶

8.) Neither the general contract nor the individual subcontracts can serve as the basis for

a finding of tribal jurisdiction. Tribal jurisdiction cannot be created by contract where, as

here, none otherwise exists. See <u>Ninigret Development Corp. v. Narragansett Indian</u>

<u>Wetuomuck Housing Authority</u>, 207 F.3d 21, 33 (5th Cir. 2000) (stating that "the

---

[3] The affidavit of Don Steever (S & S Builders), Ron Fox (Fox Drywall &
Plastering, Inc., and Dave Duncan (G&D Viking Glass, Inc.," which have been filed in
support of Plaintiffs' Motion for Preliminary Injunction, will be collectively referred to as
"Subcontractors' Affidavits. Plaintiff H&R Roofing of South Dakota, Inc., will file its
affidavit at a later date.

determination of the existence and extent of tribal court jurisdiction must be made with

reference to federal law, not with reference to forum-selection provisions that may be

contained within the four corners of an underlying contract.") (citing National Farmers

Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 855-56 (1985)). This well-recognized rule

should not be defeated by a finding that the contractual obligations owed by the

Subcontractors to Sioux Falls Construction created a consensual relationship between the

Subcontractors and the Flandreau Santee Sioux Tribe.

      The lack of significance the Subcontractors' contracts with Sioux Falls

Construction hold in this jurisdictional analysis was recognized by the Flandreau Santee

Sioux Appellate Court. In reversing the trial court's initial finding of jurisdiction in its

October 3, 2009, opinion, the Appellate Court rejected the trial court's reliance on the

boiler-plate provisions in the subcontracts for its exercise of jurisdiction, and provided it

with the following guidance in analyzing Montana's consensual relationship analysis:

> Such an undertaking can only be determined through an evaluation of the
> Tribe's regulatory structure (e.g., business license, building code
> requirements), relevant contract (and subcontract) provisions, and perhaps,
> most importantly, the testimony of officials of the Tribe, Sioux Falls
> Construction Company, and the various subcontractors as to their
> understanding of the "commercial dealing" relationship of the Tribe to the
> subcontractors in particular, which in turn, may be affected by these
> individuals and/or their mutual relationship to Sioux Falls Construction.

(Ex. G, Aff. William P. Fuller, p. 4.) Noticeably absent from the Appellate Court's

suggested analysis was any mention of the subcontracts between the Subcontractors and

Sioux Falls Construction. Of further significance is the fact that the jurisdictional

considerations set forth by the Appellate Court affirmatively establish the tribal court's

lack of jurisdiction over the Subcontractors in the underlying action.

With the exception of Third-Party Defendant G&D Viking Glass, Inc., none of the

Subcontractors had ever worked for the Tribe in the past and the Royal River Casino

project was the only work they had performed within the boundaries of the Reservation.[4]

The Tribe relied on Sioux Falls Construction to select subcontractors and the Tribe played

no role in the bidding process. (Subcontractors' Affidavits, ¶ ¶ 10-13.) From the

initiation of the Project to its completion, the Subcontractors dealt only with Sioux Falls

Construction on all matters regarding the Project. (Id.) The Subcontractors were paid by

Sioux Falls Construction, supervised by Sioux Falls Construction and took direction only

from Sioux Falls Construction. (Id. at ¶ ¶ 11, 13.) The Tribe did not require, nor did the

Subcontractors obtain, tribally-issued building permits or licenses. (Id. at ¶ 12.) The

Subcontractors were not required to comply with a tribal building code. (Id. ¶ 13.) Based

on all of the factors outlined by the Appellate Court, there was no consensual relationship

---

[4] It is undisputed that G&D Viking Glass's prior business dealings bear no
connection to the present action. Accordingly, these dealings do not give rise to the
Tribe's jurisdiction over Sioux Falls Construction's claims against G&D Viking Glass.
See Atkinson Trading Company v. Shirley, 532 U.S. 645, 656 (2001) (noting that the
Tribe's exercise of jurisdiction or regulatory authority must have a nexus with the
consensual relationship itself).

Civ.
Brief in Support of Plaintiffs' Motion for Preliminary Injunction
Page 12

between the Subcontractors and the Tribe and, as a result, no basis for a finding of tribal

jurisdiction.

  While tribal jurisdiction must exist separate and apart from the subcontracts, even

the facts surrounding the subcontracts' execution fail to support a finding of tribal

jurisdiction. Neither Sioux Falls Construction nor the Subcontractors maintain offices,

employees or assets on the property of the Flandreau Santee Sioux Tribe. (Id. ¶ 3.) In

addition, the Subcontractors do not advertise on tribal property. (Id. ¶ 4.) The

subcontracts were all executed outside of the boundaries of the Flandreau Santee Sioux

Reservation. (Id. at ¶ 7.) More importantly, the subcontracts expressly provided that

"[n]othing in this Agreement shall be construed to create a contractual relationship

between persons or entities other than the Design-Builder and Subcontractor. (Ex. B,

Affidavit of William P. Fuller, ¶ 2.5.) By signing a contract with a non-member general

contractor outside of tribal property, the Subcontractors did not intend to subject

themselves to the jurisdiction of the Flandreau Santee Sioux Tribe. (Subcontractors'

Affidavits, ¶ 14.) As in <u>Plains Commerce,</u> the scope of the Tribe's jurisdiction over non-

members under <u>Montana</u>'s consensual relationship exception should remain limited.

  Like <u>Montana</u>'s first exception, this Court's civil jurisdiction under the second

<u>Montana</u> exception is very narrow, and, under these facts, cannot be satisfied. The

second <u>Montana</u> exception permits the tribe to exercise civil jurisdiction when the

non-Indians' "'conduct' menaces the 'political integrity, the economic security, or the

health or welfare of the tribe.'" <u>Plains Commerce Bank,</u> 554 US at 341 (quoting

<u>Montana</u>, 450 U.S. at 566). General allegations of economic injury are not enough to

satisfy this exception. "The conduct must do mo re than injure the tribe, it must 'imperil

the subsistence' of the tribal community." <u>Id</u>. (internal citations and quotations omitted).

"The elevated threshold for application of the second <u>Montana</u> exception suggests that

tribal power must be necessary to avert catastrophic consequences." Cohen § 4.02[3][c],

at 232, n. 220. This threshold cannot be met.

 The Subcontractors' presence in the tribal court action has no effect on the Tribe's

ability to seek recourse for its claims against the general contractor on the project, Sioux

Falls Construction. The Tribe seeks to recover damages from Sioux Falls Construction

based on the duties and obligations set forth in the general contract. It is only Sioux Falls

Construction that seeks redress against the Subcontractors. Because the Tribe's claims

against Sioux Falls Construction are not dependent on the Subcontractors' presence in the

tribal court action, the Subcontractors' dismissal from this lawsuit will not cause

"catastrophic consequences." Accordingly, the second <u>Montana</u> exception, like the first,

does not apply. The result is a prima facie case establishing that the Flandreau Santee

Sioux Tribal Court has no jurisdiction over the contribution and indemnity claims

asserted by Sioux Falls Construction against the Subcontractors in the underlying tribal

court action.

### B.     Threat of irreparable injury and balancing of the harm.

While the Subcontractors' likelihood of success on the merits is significant for

purposes of analyzing the Subcontractor's request for a preliminary injunction, additional

factors relevant to such an analysis also weigh in favor of granting their request.  The

Subcontractors will suffer irreparable injury if a preliminary injunction is not granted.

The law is clear that "subjecting [a party] to proceedings before a tribunal presently under

jurisdictional scrutiny by [a federal court], before it makes an ultimate ruling on whether

or not said tribunal is jurisdictionally sound would cause irreparable injury to [that

party]." Hicks v. Bush, 397 F. Supp.2d 36, 41-42 (D.D.C. 2005).  If the trial goes

forward and [this Court] later determines that [the tribal court] lacks jurisdictional

authority, 'setting aside the judgment after trial. . . insufficiently redresses [the

Subcontractor's] right not to be tried by a tribunal that has no jurisdiction.'" Id. at 42.

Indeed, as one federal district court concluded when it issued an injunction halting

proceedings against a nonmember in tribal court, without the injunction, the tribal

member would be

> faced with the possibility of irreparable injury if it were forced to appear
> and defend in Tribal Court.  Since there is no avenue of appeal or other
> recourse to another forum from the Tribal Courts, UNC would effectively
> be denied the opportunity to avoid the overreaching tribal jurisdiction if this
> Court were to deny the request for an injunction.

UNC Resources, Inc. v. Benally, 518 F. Supp.2d 1046, 1053 (D. Ariz. 1997).  Here, the

Subcontractors have already presented their jurisdictional arguments to the tribal court

system.  There is now no way for the Subcontractors to prevent the irreparable injury of a

trial by a tribunal without jurisdiction unless this Court acts to prohibit the tribal court

from proceeding in Sioux Falls Construction's indemnity/contribution claims against the

Subcontractors.  This does not leave Sioux Falls Construction without a remedy.  Sioux

Falls Construction can bring its contribution and indemnity claims against the

Subcontractors in South Dakota state court.  As such, "the balance of hardships tips in

favor of [the Subcontractors] since [Sioux Falls Construction's] injuries may be redressed

in a state court of competent jurisdiction."  Id. at 1053.  Accordingly, these factors too

weigh in favor of granting the Subcontractors' request for a preliminary injunction.

     **C.**    ***Public interest.***

     The public interest component of this Court's analysis also weighs in the

Subcontractors' favor.  Staying the tribal court proceedings is in compliance with the

principle that tribal courts have limited jurisdiction over non-members while permitting

this Court to make such a determination is clearly in the public interest.  As explained by

one federal court, "[i]t would not be in the public interest to subject [the Subcontractors]

to a process which [this Court] may determine to be invalid.  It is in the public interest to

have a final decision, leaving no doubts as to this key jurisdictional issue, before [the

Subcontractors' tribal court] proceedings begin."  Hicks, 397 F. Supp.2d at 43.

## Conclusion

Having exhausted their tribal remedies, the Subcontractors' request for a preliminary injunction is appropriate both jurisdictionally and substantively. The tribal court does not have jurisdiction over Sioux Falls Constructions' contribution and indemnity claims against the Subcontractors – claims that arise out of a contract between two non-members. The posture of this dispute and the facts surrounding the same fail to overcome the presumption that tribal jurisdiction over non-members is invalid. Because the Subcontractors have established a substantial likelihood of success on the merits, they respectfully request that this Court grant their motion, and issue a preliminary injunction barring all further proceedings in tribal court, including discovery, see, e.g., BNSF Railway Co., 2006 WL 1789070, at * 2, until this Court can make a decision on the merits as to the jurisdictional issues presented.

Dated this 13th day of February, 2012.

FULLER & SABERS, LLP

William Fuller
Hilary L. Williamson
7521 S. Louise Avenue
Sioux Falls, SD 57108
605-333-0003 (phone); 605-333-0007 (fax)
E-mail bfuller@fullerandsabers.com
        hwilliamson@fullerandsabers.com
Attorneys for Third-Party Defendant S & S
Builders, Inc.

Civ.
Brief in Support of Plaintiffs' Motion for Preliminary Injunction
Page 17

Dated this __13ᵗʰ__ day of February, 2012.

CADWELL, SANFORD, DEIBERT &
GARRY, LLP

Mr. William C. Garry
200 East 10ᵗʰ Street, Suite 200
P.O. Box 2498
Sioux Falls, SD 57101-2498
605-336-0828 (phone); 605-336-6036 (fax)
bgarry@cadlaw.com
**Attorneys for Third-Party Defendant G&D
Viking Glass, Inc.**

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

Civ.
Brief in Support of Plaintiffs' Motion for Preliminary Injunction
Page 18

Dated this _13ᵗʰ_ day of February, 2012.

MAY & JOHNSON

Mr. Mark J. Arndt
P.O. Box 88738
Sioux Falls, SD 57109
605-336-2565 (phone); 605-336-2604 (fax)
marndt@mayjohnson.com
**Attorneys for Third-Party Defendant Fox
Drywall & Plastering, Inc.**

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

Civ.
Brief in Support of Plaintiffs' Motion for Preliminary Injunction
Page 19

Dated this ⟩3ᵗʰ day of February, 2012.

LARKIN HOFFMAN DALY & LINDGREN, LTD.

Mr. Paul R. Smith
Mr. Ryan N. Boe
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, MN 55431
952-896-3318 (phone); 952-842-1744 (fax)
psmith@larkinhoffman.com
rboe@larkinhoffman.com
**Attorneys for Third-Party Defendant H&R Roofing of South Dakota, Inc.**

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK